# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60645

United States Court of Appeals
Fifth Circuit

**FILED**

August 24, 2015

Lyle W. Cayce
Clerk

JORGE A. AVILES,

       Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

       Respondent.

Petition for review of a final order from the
Merits Systems Protection Board

Before CLEMENT, PRADO, and ELROD, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Former IRS agent Jorge Aviles asserts that he was fired in retaliation for protected whistleblowing. Aviles alleges that he uncovered that ExxonMobil Corporation ("Exxon") had perpetrated a $500 million tax fraud and that IRS officials covered it up. Aviles claims he disclosed this information to his supervisors and that he was ultimately fired in retaliation for this protected disclosure in violation of the Whistleblower Protection Act. An administrative law judge (ALJ) dismissed Aviles's appeal. The ALJ found that—aside from Aviles's "vague and conclusory" allegations of a cover-up— Aviles failed to allege that the government was involved in Exxon's alleged wrongdoing. Over a dissent, the Merit Systems Protection Board ("MSPB" or

No. 14-60645

"the Board") affirmed. Because we agree with the Board's finding that Aviles failed to make a nonfrivolous allegation of government involvement in Exxon's alleged wrongdoing, we conclude that Aviles's disclosure was not protected and deny his petition.

## I. BACKGROUND

This is the first direct appeal to the Fifth Circuit from a Merit Systems Protection Board adjudication in the wake of the 2012 amendments to the Whistleblower Protection Act. Aviles grounds his petition for review in the drafting history of the Whistleblower Protection Act; he argues that Congress has repeatedly expanded the definition of protected whistleblowing activities. Accordingly, before reviewing the underlying facts and procedural background, we provide a brief overview of the drafting history and the statutory scheme governing Aviles's claim.

## A.    Legal Background and Statutory Framework

The Civil Service Reform Act of 1978 established statutory protections to encourage federal employees to disclose government illegality, waste, fraud, and abuse; and also established the Merit Systems Protection Board as an independent agency to adjudicate these claims. Pub. L. No. 95-454, §§ 101, 202, 92 Stat. 1111, 1113–14, 1121–31. Congress later passed the Whistleblower Protection Act (WPA) of 1989, Pub. L. No. 101-12, 103 Stat. 16. The WPA proscribes retaliation against a federal employee who discloses what the employee reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *See* 5 U.S.C. § 2302(b)(8).

From its inception in 1982 until recently, the Federal Circuit exercised exclusive jurisdiction over petitions for review of MSPB adjudications that involved only federal-employee whistleblower claims. *King v. Dep't of the Army*,

No. 14-60645

570 F. App'x 863, 864 (11th Cir. 2014) (per curiam). These claims were directly appealable to the Federal Circuit and reviewed for arbitrariness or capriciousness and for substantial evidence. *Id.* at 865; *see also* 5 U.S.C. § 7703(c).

Concerned that the Federal Circuit and the MSPB had interpreted the WPA's definition of protected disclosures too narrowly, Congress amended the statute in 1994. *See* Act of Oct. 29, 1994, Pub. L. No. 103-424, 108 Stat. 4361; S. Rep. No. 103-358, at 8–10 (1994) (criticizing the Federal Circuit's "construction of the legislative history" and declaring that "the Board and the courts should not erect barriers to disclosures which will limit the necessary flow of information from employees who have knowledge of government wrongdoing"). In 2012, Congress again significantly amended the WPA through the Whistleblower Protection Enhancement Act (WPEA) to address similar concerns. This time, to encourage diverse appellate review—which leads to circuit splits (facilitating Supreme Court review), S. Rep. No. 112-155, at 11 (2012)—Congress also expanded judicial review to all circuits, with this provision of the law scheduled to "sunset" five years later, 5 U.S.C. § 7703(b)(1)(B); *see also* All Circuit Review Extension Act, Pub. L. No. 113-170, 128 Stat. 1894 (extending the sunset of all-circuit review to five years instead of two years after enactment).

## B.    Factual and Procedural Background

The following factual background is essentially undisputed and is drawn from the administrative record of the MSPB adjudication. Aviles worked as an International Examiner at the IRS's Large and Mid-Sized Business Division in Houston, Texas. As part of his duties, Aviles worked onsite at Exxon's facility auditing its international tax filings. In September 2010, Aviles received a letter from the Acting Territory Manager proposing that he be "removed from his position for: 1) absence without leave for a total of 552 hours;

2) failure to follow a managerial directive to report to work; and 3) providing misleading statements in matters of official interest." Later that year, the proposal for Aviles's removal was sustained, and Aviles's employment with the IRS ended.

In 2013, Aviles filed an individual right of action (IRA) appeal with the MSPB, asserting that he was removed in retaliation for protected whistleblowing. Specifically, Aviles alleged that he filed a complaint with the Office of Special Counsel (OSC)[1] in which he explained that he had disclosed to his supervisor on February 2, 2010, "[i]ncome tax fraud and blockage of computer committed by ExxonMobil Corporation and[] the involvement by IRS management team in helping to cover it up." Aviles also alleged that on February 16, 2010, he disclosed "income tax fraud in excess of US$ 500 million for the tax years 2006 and 2007" on the part of Exxon to the Commissioner of the IRS and other IRS officials. Aviles's removal process started months later in September 2010, and he was removed in November of that year.

### 1. MSPB Proceeding

The ALJ found that 5 U.S.C. § 2302(b)(8)'s protections "safeguard whistleblowers against retaliation for the disclosure of governmental wrongdoing," and dismissed Aviles's claim because he only alleged "tax fraud by a private entity." Importantly, the ALJ relied in part on the Federal Circuit's decision in *Willis v. Department of Agriculture*, 141 F.3d 1139 (Fed. Cir. 1998) in making this ruling. The ALJ noted that "[a]llegations that particular government officials allowed or facilitated wrongful conduct by a private organization" may be protected. But the ALJ found that Aviles's "vague

---

[1] The Office of Special Counsel receives and investigates allegations of prohibited personnel practices and disclosures of "violations of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 1212(a)(2)–(3). Indeed, before filing an individual-right-of-action complaint, a federal employee must first present her allegations to the OSC. *See* 5 U.S.C. § 1214(a)(3).

and speculative assertion of possible unspecified 'involvement' by unidentified agency officials in alleged private misconduct by a taxpayer does not constitute a nonfrivolous allegation of whistleblowing activity." Accordingly, the ALJ dismissed Aviles's claim for lack of jurisdiction, and the MSPB affirmed 2–1 over a dissent in a short, nonprecedential final order.

### 2. *The Dissent*

Vice Chairman Wagner dissented, and Aviles's petition for review to this Court echoes many of the points raised in the dissent. Vice Chairman Wagner concluded that, in enacting the WPEA in 2012, "Congress contemplated that its protection would extend to disclosures of wrongdoing by private entities made by federal employees in the normal course of duties." She argued that this conclusion follows from the text of § 2302(f), through which Congress "made clear that the statutory definition of a 'protected disclosure' includes disclosures made by a federal employee in the normal course of duties." She bolstered her argument by relying on the legislative history, which she claims evinces Congress's intent in part to "overturn the . . . Federal Circuit's decision in *Willis*," a decision that, as noted, the ALJ relied on.

* * *

Aviles timely petitioned for review of the MSPB's decision directly to this Court.

## II. JURISDICTION AND STANDARD OF REVIEW

As noted above, the Federal Circuit previously had exclusive jurisdiction to hear petitions for review of MSPB decisions. *See Williams v. Wynne*, 533 F.3d 360, 373 n.12 (5th Cir. 2008) (citing a previous version of 5 U.S.C. § 7703(b)(1) (2006)).[2] In 2012, Congress extended jurisdiction to all U.S. Courts

---

[2] Federal district courts have had jurisdiction to review so-called "mixed cases" involving claims of discrimination and also federal whistleblower-retaliation claims, and the Fifth Circuit has appellate jurisdiction in these cases. *E.g.*, *Williams*, 533 F.3d at 373 n.12.

of Appeals when it passed the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, § 108(a), 126 Stat. 1468 (codified as amended at 5 U.S.C. § 7703(b)(1)). Now, we have jurisdiction to review a final order or decision from the MSPB under 5 U.S.C. § 7703(b)(1)(B).

Ordinarily, we review the merits of whistleblower-retaliation claims presented to the MSPB based solely on the administrative record "and will uphold the Merit Systems Protection Board's determinations unless they are clearly arbitrary and capricious, unsupported by substantial evidence or otherwise not in accordance with law." *Williams*, 533 F.3d at 373. But this Court has not yet had an opportunity to review a threshold jurisdictional determination.

Since this Court has not previously regularly reviewed MSPB decisions, we look to the Federal Circuit for guidance. The Federal Circuit reviews de novo the question whether the MSPB had jurisdiction to adjudicate a case, reasoning that "[w]hether jurisdiction exists is a question of law." *Waldau v. Merit Sys. Prot. Bd.*, 19 F.3d 1395, 1398 (Fed. Cir. 1994).[3]

However, the Federal Circuit's approach to MSPB jurisdictional determinations may have been called into question by the Supreme Court's recent decision in *City of Arlington, Texas v. FCC*, 133 S. Ct. 1863 (2013). The Court explained that "the distinction between 'jurisdictional' and 'nonjurisdictional' interpretations is a mirage," *id.* at 1868, and it held that "*Chevron* [deference] applies to cases in which an agency adopts a construction of a jurisdictional provision of a statute it administers," *id.* at 1871. No party addressed this issue in their appellate briefs.

---

[3] Indeed, "a court decides de novo whether an agency has acted within the bounds of congressionally delegated authority." Harry T. Edwards et al., *Federal Standards of Review: Review of District Court Decisions and Agency Actions* ch. XIII(A) (2013).

No. 14-60645

In light of *City of Arlington*, we assume without deciding that de novo review applies, consistent with the Federal Circuit's practice; as explained below, we would deny the petition under either standard.

### III. LEGAL STANDARD

There is an initial dispute about the petitioner's burden to establish threshold jurisdiction. To establish MSPB jurisdiction over an IRA appeal, the burden is on the petitioner, and the petitioner "must make nonfrivolous allegations . . . with regard to the substantive jurisdictional elements applicable to the particular type of appeal he or she has initiated." 5 C.F.R. § 1201.57(b); *accord Kahn v. Dep't of Justice*, 528 F.3d 1336, 1341 (Fed. Cir. 2008). Federal regulations define "nonfrivolous allegation" in this context to mean: "[A]n assertion that, if proven, could establish the matter at issue." 5 C.F.R. § 1201.4(s). The regulations elaborate:

> An allegation generally will be considered nonfrivolous when, under oath or penalty of perjury, an individual makes an allegation that:
>
> (1) Is more than conclusory;
>
> (2) Is plausible on its face; and
>
> (3) Is material to the legal issues in the appeal.

*Id.*

Intervenor the Department of the Treasury ("Treasury") contends that "the appellant bears the burden to establish jurisdiction by a *preponderance of the evidence*," citing 5 C.F.R. § 1201.56 (emphasis added). Petitioner Aviles disagrees. Aviles relies on the Federal Circuit's decision in *Garcia v. Department of Homeland Security*, in which the en banc court explained:

> Section 1201.56 of the regulations, *placing the burden of proof on the employee with respect to "jurisdictional issues," is plainly not concerned with the first issue of technical jurisdiction* (the need for a non-frivolous allegation), but rather with the second issue (concerning the ultimate merits). It places the burden of proof on

7

the employee at a merits hearing with respect to merits issues that are also jurisdictional issues. Thus, although the regulation characterizes the issues with which it is concerned as "jurisdictional" in nature, the regulation is directed, in fact, to the allocation of the burden of proof on the merits.

437 F.3d 1322, 1333–34 (Fed. Cir. 2006) (en banc) (emphasis added) (quoting *Walley v. Dep't of Veterans Affairs*, 279 F.3d 1010, 1019 (Fed Cir. 2002)).

We agree with Aviles's interpretation of *Garcia*, which we follow as persuasive, and we conclude that Aviles need not establish jurisdiction by a preponderance of the evidence. As *Garcia* makes clear, section 1201.56's preponderance-of-the-evidence standard applies only to the merits of "constructive adverse action cases" under 5 U.S.C. § 7512, and it does not apply to the threshold jurisdictional determination in Whistleblower Protection Act cases. *See* 437 F.3d at 1325.

We also conclude that the standard for determining whether nonfrivolous allegations are sufficient to meet the threshold jurisdictional requirement for an IRA appeal is analogous to that which we use for evaluating a motion to dismiss.[4] Accordingly, we accept all well-pleaded facts as true and view those facts in the light most favorable to the petitioner. *See Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935 (2014).

---

[4] We note that this approach conflicts with the approach of the Federal Circuit: "The standard for determining whether non-frivolous disclosures exist is analogous to that for *summary judgment*." *Kahn*, 528 F.3d at 1341 (emphasis added) (internal quotation marks omitted); *see also Dorrall v. Dep't of the Army*, 301 F.3d 1375, 1380 (Fed. Cir. 2002), *overruled on other grounds by Garcia*, 437 F.3d 1322 ("[T]he Board may properly consider the government's evidence as well as the employee's in deciding the threshold question of jurisdiction. . . . [I]n this context, the petitioner must show the existence of a material fact issue as to voluntariness to support Board jurisdiction.").

But because the applicable federal regulations closely track our motion-to-dismiss standard—not our summary judgment standard—we decline to follow the Federal Circuit's approach. *Compare* 5 C.F.R. § 1201.4(s) (providing that a nonfrivolous allegation is a non-conclusory allegation that "[i]s plausible on its face"), *with Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011) (explaining that, to survive a motion to dismiss, the factual allegations taken as true must "state a claim that is plausible on its face").

The facts taken as true must, however, "state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). "A claim has facial plausibility when the [petitioner] pleads factual content that allows the court to draw the reasonable inference that the [employer] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). An IRA complaint is insufficient "if it offers only 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## IV. DISCUSSION

Aviles argues (a) that Congress's recent amendment of the Whistleblower Protection Act expanded the scope of protected disclosures to include disclosures of purely private wrongdoing and (b) that even if only disclosures of government misconduct are protected, he non-frivolously alleged that IRS officials were complicit in Exxon's alleged tax fraud. We address each argument in turn.

### A.     Reports of Purely Private Wrongdoing as Protected Disclosures

Aviles's argument raises an initial issue of statutory interpretation of 5 U.S.C. § 2302. As amended, 5 U.S.C. § 2302(b)(8) prohibits adverse personnel actions based on:

> (A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—
>
> > (i) any violation of any law, rule, or regulation, or
> >
> > (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . .

Through the WPEA, Congress added subsection 2302(f)(2), which provides: "If a disclosure is made during the normal course of duties of an employee, the disclosure shall not be excluded from subsection (b)(8) . . . ." § 101, 126 Stat. at

1465–66. The dissenting Vice Chairman reasoned from this addition that, "as a matter of plain logic," "when the federal employee's normal course of duties includes regulating, monitoring, or investigating private entities, a disclosure about alleged wrongdoing by the private entity falls squarely within the WPEA's coverage."

Aviles relies on Vice Chairman Wagner's dissent from the Board's decision[5] and argues that Congress extended whistleblower protection through the WPEA to include disclosures of "wrongdoing by private entities made by federal employees." Specifically, Aviles points to the Senate Committee Report for the 2012 amendment, which states that subsection 2302(f)(2) "overturns . . . court decisions that narrowed the scope of protected disclosures," including *Willis v. Department of Agriculture*, 141 F.3d 1139 (Fed Cir. 1998), a decision the Board relied on. S. Rep. No. 112-155, at 5 (2012). Accordingly, Aviles argues that his disclosure that Exxon "inflated its foreign income sales and fraudulently added supplemental tax data in order to reduce its overall tax liability by over $500 million" was protected, and that he was "subjected to numerous [adverse] personnel actions, including . . . ultimately removal" as a result of his protected disclosure.

The Treasury Department counters that the "plain language of section 2302(b)(8) . . . requires that a disclosure must evidence Government misconduct to be eligible for whistleblower protection." Treasury interprets the legislative history of the 2012 amendments differently from Aviles and the dissent. Although the WPEA did seek to overturn several Federal Circuit decisions that had narrowed the scope of protected disclosures, Treasury argues that Congress's decision to overturn these decisions did not silently extend whistleblower protection to claims involving purely private conduct.

[5] *See supra* Part I(B)(2).

Rather, Treasury concludes that the legislative history and statutory text reflect "Congress's intention to protect disclosures of *Government* misconduct." The MSPB largely echoes these points, but also adds that, "because § 2302(f)(2) is silent on the issue of whether private misconduct . . . constitutes a basis for a protected disclosure, this Court should defer to the Board's reasonable interpretation of the statute" under the *Chevron* doctrine.

We agree with Treasury and the MSPB that Congress did not intend to protect disclosures of purely private wrongdoing when it enacted the WPEA. Applying traditional principles of statutory interpretation—without deciding what deference, if any, should be afforded the Board's unpublished[6] interpretation of the amended statute—we reject Aviles's interpretation of the statute to include purely private wrongdoing.[7] The text indicates that the focus of the statute is government wrongdoing. *See* § 2302(b)(8) (protecting disclosures of, *inter alia*, "gross mismanagement, a gross waste of funds, [or] an abuse of authority"). Nothing in the text of the WPEA purports to *extend* subsection (b)(8) to extra categories of disclosures; the language simply clarifies that otherwise-covered disclosures are not *excluded* merely because they are made during an employee's normal duties. *See* § 2302(f)(2) ("If a disclosure is made during the normal course of duties of an employee, the disclosure *shall not be excluded* from subsection (b)(8) . . . ." (emphasis added)).

Aviles's proposed interpretation is also at odds with common sense and principles of statutory interpretation. His interpretation could turn every enforcement disagreement between a subordinate and a supervisor at the IRS,

---

[6] MSPB adjudications resolved by a "nonprecedential Order" "are not binding on the Board or its administrative judges in any future appeals except when it is determined they have a preclusive effect on parties under the doctrines of res judicata (claim preclusion), collateral estoppel (issue preclusion), judicial estoppel, or law of the case." 5 C.F.R. § 1201.117(c)(2). In contrast, "[a]n Opinion and Order is a precedential decision of the Board and may be appropriately cited or referred to by any party." *Id.* § 1201.117(c)(1).

[7] We assume, without deciding, that de novo review applies.

No. 14-60645

FBI, Department of Justice, or other federal agency into a potential protected disclosure and an eventual whistleblower claim down the road. After all, many federal agency employees make enforcement decisions concerning private persons "during the normal course of [their] duties," *id.*, on a day-to-day basis in dialogue with their supervisors. If Congress intended such a significant intrusion into the settled law governing federal employment relationships, we believe it would have spoken more clearly. This comports with principles of statutory interpretation. *See Barbee v. United States*, 392 F.2d 532, 535 n.4 (5th Cir. 1968) ("A change of phraseology in a revision will not be regarded as altering the law where it had been settled by plain language in the statutes, or by judicial construction thereof, unless it is clear that such was the intent." (quoting *McDonald v. Hovey*, 110 U.S. 619, 629 (1884))); *cf.* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 318–19 (2012) ("The better view is that statutes will not be interpreted as changing the common law unless they effect the change with clarity.").

Because we conclude that the text of the amended statute after application of ordinary principles of statutory interpretation supports the Board's interpretation, we need not and do not rely on the legislative history. *See Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 518–19 (5th Cir. 2004) (citing *United States v. Kay*, 359 F.3d 738, 743 (5th Cir. 2004)).[8]

Aviles's legislative-history argument is also unavailing because it is contrary to the text of the amendment. Aviles points to a Senate committee report and contends that the report is evidence that the WPEA overturns the Federal Circuit's decision in *Willis*, an opinion that the administrative judge

---

[8] Although our interpretation follows from the text applying ordinary principles of statutory interpretation, we express no view on whether the text is "unambiguous" and "thus leaves no room for agency discretion" within the meaning of the Supreme Court's decision in *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967, 982 (2005).

expressly relied on.[9] Aviles proposes that, therefore, by overturning *Willis*, Congress extended protection to disclosures of purely private wrongdoing. The disclosure in *Willis* did concern private wrongdoing: the petitioner complained about his supervisors' decision "reversing [his] determination that the [private] farms failed to comply with USDA conservation plans," 141 F.3d at 1141, and the court held that his disclosures to his immediate supervisors were not protected, *id.* at 1143.

But the text of the WPEA does not mention disclosures of purely private wrongdoing; if anything, the text added by the amendment reflects Congress's concern that language in the *Willis* decision could be interpreted as categorically *excluding* otherwise-protected disclosures from protection if those disclosures are made *in the ordinary course of a federal employee's job duties.* *See* § 2302(f)(2). In rejecting the petitioner's proposed blanket rule in *Willis* that the WPA entitled federal employees "to assert that the required performance of their day-to-day responsibilities" per se "constitute[s] a protected disclosure," the Federal Circuit suggested that disclosures in the normal course of duties are not protected, *see id.* at 1144. The text added by the WPEA provides that "a disclosure . . . made during the normal course of duties of an employee . . . *shall not be excluded* from [protection under] subsection (b)(8)" solely for that reason, § 2302(f)(2) (emphasis added), and says nothing about private malfeasance. Thus, Aviles's argument is unavailing because it does not find support in the text of the amendment.

Therefore, we agree with the Board's conclusion that allegations of purely private wrongdoing are not protected disclosures under 5 U.S.C. § 2302(b)(8).

---

[9] *See* S. Rep. No. 112-155, at 5 & n.13 ("Section 101 of S. 743 overturns . . . Willis v. Department of Agriculture, [in which] the court stated that a disclosure made as part of an employee's normal job duties is not protected.").

**B.     Aviles's Allegations that He Engaged in a Protected Disclosure**

The remaining issue in this appeal is whether Aviles "nonfrivolously" alleged a protected disclosure within the meaning of § 2302(b)(8). As discussed above, allegations of purely private wrongdoing are not protected under the WPA as amended by the WPEA. But if the disclosure includes allegations of government complicity in the private wrongdoing, then the disclosure may be protected. Thus, the question is whether Aviles nonfrivolously alleged that IRS officials were complicit in Exxon's alleged tax fraud.

The Ninth Circuit's decision in *Coons v. Secretary of the U.S. Department of the Treasury* is instructive. 383 F.3d 879 (9th Cir. 2004). There, Coons argued he was demoted in retaliation for making protected disclosures— namely, that undisclosed IRS agents illegally shared confidential information with a taxpayer's lawyer and that IRS agents knowingly manually processed a large fraudulent refund for that taxpayer. *Id.* at 888–90. The Ninth Circuit reversed the Board's decision dismissing Coons's whistleblower claim. *Id.* at 891. It held that Coons's claim that IRS officials, "whose mission is to collect taxes, improperly processed a large, fraudulent refund for a wealthy taxpayer is an allegation of 'gross mismanagement, a gross waste of funds, [or] an abuse of authority.'" *Id.* (alteration in original) (quoting § 2302(b)(8)).

Aviles argues that he nonfrivolously alleged that his supervisors "allowed or facilitated wrongful conduct by a private organization," Exxon. In response to the Board's conclusion that his allegations were too "vague and conclusory" and lacking in the requisite specificity to be deemed "nonfrivolous," Aviles argues that he alleged that his supervisors "ignored his disclosures of Exxon's alleged tax fraud" and "directed him not to divulge Exxon's actions." Aviles also points to his allegation that "the [IRS management] team covered up the fraud." Aviles's argument relies heavily on the Ninth Circuit's decision in *Coons*. In reply, Aviles also points to a precedential decision from the MSPB,

No. 14-60645

*Rumsey v. Department of Justice*, 120 M.S.P.R. 259 (2013), and argues that the allegations in *Rumsey* "are almost identical to" his, in that "the appellant in *Rumsey* . . . [alleged] fraudulent submittals by the state of Wisconsin, [and] that '[Justice Department] officials were covering it up.'"

The MSPB and Treasury counter that the Board correctly concluded that Aviles's "generalized assertions" of government involvement in Exxon's fraud "do not constitute a non-frivolous allegation of a protected disclosure." They point out that the petitioner's allegations in *Coons* "were detailed and specific, including: that a former Regional Counsel for the IRS was using his influence to corrupt the IRS's collection of taxes from a taxpayer," and that Aviles's "vague allegations of a 'cover up'" without more "do not rise to this level." Treasury adds that, "even after the administrative judge gave Mr. Aviles multiple opportunities to explain his disclosure [that the IRS management team helped to cover up Exxon's alleged tax fraud] in further detail, Mr. Aviles failed to do so."

We agree with the Board's decision dismissing Aviles's appeal and deny Aviles's petition for review. Unlike Aviles's vague and conclusory allegations of a "cover up," the allegations in the *Coons* case specifically implicated particular government officials. The Ninth Circuit noted that the petitioner's disclosures included his "concern that [a taxpayer's] attorney was using his influence [as a former Regional Counsel for the IRS] to corrupt *the IRS's* collection of taxes" from that taxpayer, and that "current IRS staff were sharing information illegally" with that taxpayer's attorney. 383 F.3d at 889. The petitioner in *Coons* also disclosed that IRS officials "improperly processed a large, fraudulent refund for a wealthy taxpayer." *Id.* at 890. In contrast, here, Aviles made no specific allegations of wrongdoing by government officials. Even on appeal, Aviles does not explain in his brief to this Court the necessary "who, what, when, where, and how" of government involvement in the alleged

cover-up of Exxon's tax fraud. *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.,* 336 F.3d 375, 387–88 (5th Cir. 2003) (affirming denial of leave to amend a complaint in part because "there is no indication in Willard's briefs to this court that he will be able to allege the necessary 'who, what, when, where, and how' of the alleged fraud"). We also note that the ALJ gave Aviles multiple opportunities to amend his IRA complaint and provide additional factual content before finally dismissing his administrative appeal. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that "repeated failure to cure deficiencies [in a complaint] by amendments previously allowed" may be grounds for dismissal).

Aviles's reliance on the Board's precedential decision in *Rumsey* is misplaced, and the distinctions between this case and *Rumsey* illustrate why Aviles's appeal was properly dismissed by the Board. Aviles takes one statement from the *Rumsey* opinion—the petitioner's allegation that "the state of Wisconsin submitted fraudulent data . . . and agency managers *were covering it up,*" 120 M.S.P.R. at 270 (emphasis added)—out of context. This allegation alone would be insufficient to establish the Board's jurisdiction; in *Rumsey*, there was significant additional evidence of federal government wrongdoing from congressional oversight hearings and news coverage, including that the agency administrator had "awarded grants" for juvenile justice and delinquency prevention to "lower-scoring organizations" despite the administrator's staff's recommendations to the contrary. *Id.* at 264. Indeed, the ALJ in that case denied the petition on the merits, finding that the petitioner's "disclosures to ABC News and Congress were not protected because . . . [that] information . . . was already publicly known" and because those disclosures

No. 14-60645

"occurred in the normal course of the performance of her duties"[10]—not because there were no allegations or evidence of government wrongdoing. *Id.* at 265, 270.

Therefore, we agree with the Board's decision that Aviles failed to nonfrivolously allege that his disclosures were protected, and Aviles's petition for review is denied.

## C.    Aviles's Remaining Argument

Aviles also argues he is entitled to relief under a separate provision of the WPA, 5 U.S.C. § 2302(b)(9), and he asks for remand to the MSPB for it to consider this claim. Subsection 2302(b)(9) prohibits an adverse personnel action "because of," *inter alia*, "the exercise of any appeal, complaint, or grievance right granted by any law, rule or regulation," including for a whistleblower action for violation of the WPA. As Treasury and the MSPB point out, Aviles failed to exhaust this claim by first presenting it to the OSC before filing his IRA with the MSPB. *See* 5 U.S.C. § 1214(a)(3).[11] Therefore, this claim is unexhausted, and we cannot consider it.

## V. CONCLUSION

For the foregoing reasons, Aviles's petition for review is DENIED.

---

[10] Ultimately, the Board reversed the ALJ's initial decision in *Rumsey* in light of the 2012 WPEA amendments, specifically § 2302(f), concluding that the ALJ's finding was "no longer correct" under the amendments based on the new "during the normal course of duties" language in § 2302(f). 120 M.S.P.R. at 270.

[11] We note that the OSC right-to-appeal letter is consistent with Aviles's actual administrative complaint to the OSC in which he was asked to "describe [his] complaint in detail."