# United States Court of Appeals
## For the First Circuit

No. 18-1762

JASON MOUNT,

Petitioner,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE UNITED STATES MERIT SYSTEMS PROTECTION BOARD

Before

Torruella, Thompson, and Kayatta,
<u>Circuit Judges</u>.

    <u>Morris E. Fischer</u>, with whom <u>Morris E. Fischer, LLC</u> was on brief, for petitioner.
    <u>Domenique Kirchner</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, with whom <u>Allison Kidd-Miller</u>, Assistant Director, <u>Joseph H. Hunt</u>, Assistant Attorney General, and <u>Robert E. Kirschman, Jr.</u>, Director, were on brief, for respondent.

August 29, 2019

**TORRUELLA**, **Circuit Judge**.  In this federal whistleblower case, petitioner Jason Mount ("Mount") alleges that his supervisors retaliated against him because he delivered a document to a colleague which the colleague later used in support of his own whistleblower case against the agency.  Mount petitions for review of a decision by the Merit Systems Protection Board ("MSPB")[1] dismissing his Individual Right of Action ("IRA") appeal under the Whistleblower Protection Act of 1989 ("WPA"), 5 U.S.C. § 1214(a)(3). Before the MSPB, Mount advanced two theories: first, that he suffered reprisal for "lawfully assisting" a coworker in that coworker's exercise of his rights under the WPA, and second, that even if he had not actually engaged in a protected activity, he was perceived by the agency and his supervisors to have done so and suffered reprisal as a result.

The MSPB denied Mount's request for relief, finding that his actions had been too minimal to constitute actual assistance under the WPA and that he had failed to exhaust his perceived

---

[1] The MSPB "is an independent, quasi-judicial federal administrative agency." Bledsoe v. Merit Sys. Prot. Bd., 659 F.3d 1097, 1101 (Fed. Cir. 2011) (quoting García v. Dep't of Homeland Sec., 437 F.3d 1322, 1327 (Fed. Cir. 2006)(en banc)).  Among other functions, the MSPB adjudicates appeals pertaining to federal employee complaints that an agency engaged in a prohibited personnel practice.  García, 437 F.3d at 1327; see also 5 U.S.C. § 7701(a)("An employee . . . may submit an appeal to the [MSPB] from any action which is appealable to the [MSPB] under any law, rule, or regulation.").

assistance claim. Before us, Mount argues that the MSPB: (1) abused its discretion by considering certain evidence when evaluating his actual assistance claim; and (2) erred in finding that he failed to exhaust administrative remedies as to his perceived assistance claim. Because Mount has not shown that he raised his objections to the evidence below, we refrain from addressing them in the first instance. As to Mount's perceived assistance claim, however, we reject the MSBP's hyper-technical application of the exhaustion requirement. For the first time in this Circuit, we hold that the WPA only requires that a complainant include sufficient factual basis to enable the agency to investigate. Because Mount complied with this requirement, we remand as to Mount's perceived assistance claim for further proceedings consistent with this opinion.

## I. Background

Mount served as a General Schedule Grade 14 ("GS-14") Supervisory Special Agent for the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") in Boston, Massachusetts. In December 2014, Assistant Special Agent in Charge ("ASAC") Robert Kurtz ("Kurtz"), Mount's supervisor at the time, tasked Mount with delivering a printout of an email thread to Special Agent ("SA") Brendan Hickey ("Hickey"), who had filed a whistleblower case against ASAC Linda Hunt ("Hunt"). The

email contained a discussion in which Kurtz criticized Hunt for her aggressive and harassing style of management. Kurtz asked Mount to tell Hickey that the email could be useful to his case. Mount delivered the email and relayed the message to Hickey.[2] Hickey eventually used the email during Hunt's deposition related to his whistleblower case.

Subsequently, the agency's Office of Professional Responsibility ("OPR") investigated how Hickey had obtained the email. On August 25, 2015, SA Thomas Pugliese interviewed Mount under oath as part of the OPR investigation (the "OPR interview"). On November 29, 2016, the OPR informed Mount that its investigation revealed "no basis to the allegation that [Mount] improperly disseminated an email and then exhibited a lack of candor about it; therefore, no case was opened in which [he was] the subject."

During the process of the OPR investigation, however, Mount was not selected for promotion twice, for job listings posted on August 5, 2015, and March 11, 2016. Moreover, in October 2015, Mount was issued a 2015 fiscal year performance appraisal that was lower than the scores he had annually received since at least 2011.

---

[2] The exact content of what Mount told Hickey at the moment of providing him with the email is unclear. While Hickey stated in his deposition that it was "I thought this was pertinent to your case," Mount testified during a subsequent investigation that he said: "Hey, this is an email that Kurtz thinks will help you out."

-4-

While Kurtz initially informed Mount that he was issuing Mount a rating of 4.8 out of 5 (meaning "achieved excellence") for fiscal year 2015, the next day Kurtz told Mount that the reviewing official, Deputy Special Agent in Charge ("DSAC") Michael Shea, had lowered his rating to a 4.2 out of 5 (meaning "exceeded expectations").

On December 30, 2015, Mount filed a complaint with the Office of Special Counsel ("OSC"), the federal office charged with investigating allegations that an agency has violated the WPA by engaging in a prohibited personnel practice. See 5 U.S.C. §§ 1212, 1214(a)(1). In his complaint, Mount provided a detailed account of the facts surrounding the personnel actions he suffered, alleging that management had conspired to "retaliate against [him] for providing information to SA Hickey that was used during his OSC whistleblower complaint/investigation against HSI Boston management officials." On August 12, 2016, Mount amended his complaint to include allegations concerning his non-selection for the March 11, 2016 job posting, an ASAC position in the DHS's Boston unit.

Because the OSC took no action, Mount filed his initial IRA appeal to the MSPB on April 7, 2017.[3] Due to scheduling

---

[3] An appellant may seek corrective action from the MSPB for a prohibited personnel pratice if "120 days after seeking corrective action from the Special Counsel, such employee . . . has not been

-5-

issues, the MSPB dismissed the IRA appeal without prejudice on August 18, 2017, and the appeal was automatically refiled on October 27, 2017. On January 8, 2018, Mount submitted a memorandum to the MSPB explaining that regardless of whether his actions constituted actual assistance pursuant to the WPA, "the Agency's subsequent actions in retaliating against [him] for delivering the email to Hickey[] put [him] squarely in the category of an employee who is perceived as providing 5 U.S.C. § 2302(b)(9)(B) assistance." In that memorandum, Mount also informed the MSPB that he was waiving his right to a hearing, noting that the case "ha[d] a very well-developed record" and explaining that "[d]ue to everything that he and his family ha[d] already been through, [he found the] hearing burdensome and unnecessary." On January 22, 2018, Mount filed his brief, claiming that the agency's management had retaliated against him because he actually assisted Hickey or, at the very least, because DHS officials perceived him as having provided such assistance.

DHS responded on February 1, 2018, arguing that: (a) Mount had not established proper exhaustion of his claims with the OSC; (b) Mount's action were too minor to be considered as

notified by the Special Counsel that the Special Counsel shall seek corrective action on behalf of such employee." 5 U.S.C. § 1214(a)(3)(B).

-6-

actually assisting Hickey; and (c) there were non-retaliatory reasons for the challenged personnel actions. In his reply brief, Mount contended among other points that he did not have to name the perceived assistance claim with its specific legal label in order for it to be exhausted.

On May 8, 2018 the MSPB issued its decision in favor of the DHS. First, the MSPB found that Mount's conduct had been too miniscule to constitute actual assistance. It explained that Mount's intention had been more akin to following a superior's order rather than to actually assisting with SA Hickey's whistleblower case. As for Mount's perceived assistance claim, the MSPB found that it was not exhausted because there was no evidence that Mount, who had been "represented by counsel throughout the process, expressly sought to raise a perceived whistleblower claim before OSC." Accordingly, the MSPB denied Mount's request for corrective action. On August 9, 2018, Mount petitioned this Court to review the MSPB's decision, which became final on June 12, 2018.

## II. Discussion

The Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.) created the MSPB and "established a comprehensive system for reviewing personnel action taken against

-7-

federal employees." United States v. Fausto, 484 U.S. 439, 455 (1988). Several years later, the WPA amended the CSRA to, among other purposes, "strengthen the protections available to Federal employees against prohibited personnel practices." Pub. L. No. 101-12, 103 Stat. 16, 16 (1989).

As relevant here, the WPA precludes an agency from engaging in "prohibited personnel practices" against a federal employee for that employee's involvement in certain whistleblowing activities. Specifically, under Section 2302(b)(8), covered agencies are barred from retaliating against a federal employee for disclosing what the employee reasonably believes evidences "(i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(A).

In addition, Section 2302(b)(9)(B) prohibits a covered employer from taking or failing to take a personnel action against an employee for "testifying for or otherwise lawfully assisting any individual in the exercise" of certain appeals, complaints, or grievances. Id. § 2302(b)(9)(B)(emphasis added); see also, e.g., Viens-Koretko v. Dep't of Veterans Affairs, 53 M.S.P.R. 160, 163 (M.S.P.B. 1992) (noting that "the appellant's act of testifying

-8-

for another employee at an EEO hearing constitutes an activity that is specifically protected under 5 U.S.C. § 2302(b)(9)(B)").

The First Circuit has only recently acquired jurisdiction to review MSPB decisions that only involve whistleblower claims. Previously, petitions for review of MSPB rulings of this sort were considered exclusively by the United States Court of Appeals for the Federal Circuit. See Avilés v. Merit Sys. Prot. Bd., 799 F.3d 457, 459 (5th Cir. 2015). However, in 2012 Congress passed the Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465 (2012), which among other matters expanded judicial review from only the Federal Circuit to "the Federal Circuit or any court of appeals of competent jurisdiction." See 5 U.S.C. § 7703(b)(1)(B). Initially, this provision was set to "sunset" in a few years, see All Circuit Review Extension Act, Pub. L. No. 113-170, 128 Stat. 1894 (2014), but in 2018, the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510 (2018), permanently authorized the change.

We may only set aside the MSPB's decision here if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); see also Rocha v. Merit Sys. Prot. Bd., 688 F.3d 1307, 1310 (Fed. Cir.

2012); Sher v. U.S. Dep't of Veterans Affairs, 488 F.3d 489, 499 (1st Cir. 2007) (so noting).

## A. Mount's Actual Assistance Claim

To establish a prima facie case of retaliation under the WPA in an IRA appeal, the appellant must show by a preponderance of the evidence that "(1) he made a [protected] disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action." Corthell v. Dep't of Homeland Sec., 123 M.S.P.R. 417, 422 (2016) (emphasis added); see also 5 U.S.C. § 1221(e)(1). Once the appellant satisfies the criteria for a prima facie case, the burden shifts to the agency to demonstrate by "clear and convincing evidence that it would have taken the same personnel action in the absence of such [protected] disclosure" or activity. 5 U.S.C. § 1221(e)(2); see also Corthell, 123 M.S.P.R. at 422.

The MSPB found that Mount did not engage in a "protected activity" under Section 2302(b)(9)(B) because his conduct in providing the email to Hickey was too minimal to constitute "lawfully assisting" Hickey in his whistleblower appeal. The MSPB explained that Mount's "involvement in Hickey's appeal, which was entirely the product of Kurtz's actions, [was] far too limited to

-10-

be considered 'assisting' Hickey under Section 2302(b)(9)(B)." Relying in part on Mount's own declarations under oath in his August 25th OPR interview, the MSPB concluded that Mount was merely following Kurtz's orders. It highlighted that in the OPR interview, Mount claimed that he had "no dog in the fight"; that "he did not want to get involved in this nonsense"; that "he was not looking to get in the middle of someone else's [legal problem]"; and that he had "made it clear to Hickey that the email was from Kurtz." Additionally, the MSPB emphasized that when asked whether he just delivered the document, Mount answered "yes."

The MSPB also considered Hickey's testimony and certain undisputed facts. It highlighted that "Kurtz selected the email, printed it out, and placed it in an envelope"; that it was Kurtz' idea to give the email to Hickey; and that Mount did not really have to go out of his way to deliver the email to Hickey, as Mount would have "had to visit Kurtz's office anyway" and he saw Hickey frequently in the building. Further, the MSPB acknowledged Hickey's testimony that Mount had told him "I thought this was pertinent to your case" when handing him the email. Nevertheless, the MSPB noted that Hickey had "hedged his assertion" in the same deposition and in a subsequent OPR interview, and identified instances in which SA Hickey's testimony had been inconsistent or vague. For example, the MSPB emphasized that at some point Hickey

-11-

testified that he thought Mount "may have said the email 'came from Kurtz.'"

On appeal, Mount claims that the agency's OPR investigation was retaliatory, and that therefore the MSPB erred by admitting his OPR interview testimony and relying on that testimony to conclude that he was not an actual assistor. Alternatively, Mount claims that the MSPB abused its discretion by lending more credibility to his OPR interview testimony under oath than to Hickey's deposition testimony.

While Mount alleges that he raised those objections to the evidence below, he has not provided any references to them in the record.[4]  To the contrary, the record demonstrates that on at least two occasions in his opening brief to the MSPB, Mount cited and relied upon his OPR interview testimony.  By not challenging the admissibility of the OPR interview testimony below, Mount prevented the MSPB from addressing these arguments and making any relevant factual determinations in the first instance.  See Colin K. by John K. v. Schmidt, 715 F.2d 1, 5-6 (1st Cir. 1983) ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues

---

[4]  And we did not come across them during our independent review.

-12-

reviewable by the courts." (quoting United States v. Tucker Truck Lines, 344 U.S. 33, 37 (1952))). That being so, and based on general rules of administrative waiver, he cannot press that challenge here (he makes no attempt to fit his case within any exception to these rules). See Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 505 (1st Cir. 1994) ("[A] court ought not to consider points which were not seasonably raised before the agency." (quoting Mass. Dep't of Pub. Welfare v. Sec'y of Agric., 984 F.2d 514, 523 (1st Cir. 1993))). Consequently, Mount's attack on the MSPB's ruling on his actual assistance claim fails.[5]

## B. Mount's Perceived Assistance Claim

In the alternative, Mount argued to the MSPB that even if he did not actually engage in "lawfully assisting" Hickey, he was at least perceived by the agency and his supervisors as having engaged in such protected activity. A "perceived assistance" claim differs from an "actual assistance" claim in that under the former, the employee must prove that the agency officials perceived the employee engaged in protected activity, rather than that the employee actually engaged in protected activity. See King v.

---

[5] With this determination, we are not endorsing or rejecting the standard laid out by the MSPB's decision for establishing a prima facie actual-assistance claim under Section 2302(b)(9)(B).

<u>Dep't of Army</u>, 116 M.S.P.R. 689, 695-96 (2011). Moreover, the employee must prove that the agency's perception (not the employee's protected conduct) was a contributing factor in the personnel action. <u>Id.</u> at 696.

Thus, even if Mount did not actually engage in a protected activity, he could still have a claim if agency officials nevertheless perceived him as having engaged in protected activity. <u>See</u>, <u>e.g.</u>, <u>Juffer</u> v. <u>U.S. Info. Agency</u>, 80 M.S.P.R. 81, 86 (1998) (observing that plaintiff's disclosure was insufficient to constitute "a true protected disclosure under the WPA[,]" but "[o]ne who is perceived as a whistleblower is still entitled to the protections of the WPA, even if she has not made protected disclosures"); <u>Special Counsel</u> v. <u>Dep't of Navy</u>, 46 M.S.P.R. 274, 278 (1990)(examining the WPA's text and legislative history, and finding that "[a]n employee who does not engage in protected activity may nonetheless be covered by the WPA where a retaliatory personnel action is taken against him based on the belief that he had engaged in protected activity").

To date, the MSPB has only adopted a perceived activity analysis in § 2302(b)(9)(C) and § 2302(b)(8) cases, whereas Mount brings his claim under § 2302(b)(9)(B). <u>See</u>, <u>e.g.</u>, <u>Corthell</u>, 123 M.S.P.R. at 422 (finding that the MSPB is authorized to consider a perceived activity claim under § 2302(b)(9)(C)); <u>King</u>, 116

-14-

M.S.P.R at 695 (considering a perceived activity claim under § 2302(b)(8) and citing a number of perceived activity cases that "arose from widely different factual circumstances" but nevertheless "share a common element, i.e., that agency officials appeared to believe that the appellants engaged or intended to engage in whistleblowing activity"). In this case, the MSPB noted that its reasoning in prior cases "would appear equally applicable to Section 2302(b)(9)(B)," and it thus "presumed" that a perceived assistance claim under that section is cognizable. The parties do not contest this, so we likewise presume it to be correct for the limited purpose of resolving this appeal.

Before filing an appeal with the MSPB, an employee must exhaust his administrative remedies with the OSC. 5 U.S.C. § 1214(a)(3) (employee "shall seek corrective action from the Special Counsel before seeking corrective action from the Board"); see also Irizarry v. United States, 427 F.3d 76, 78 (1st Cir. 2005).[6]

---

[6] For an employee to "establish[that the MSPB has] jurisdiction" over an IRA appeal regarding a perceived assistance claim, he must, in addition to showing that he exhausted remedies before the OSC, make "a nonfrivolous allegation that the agency perceived [him] as a whistleblower [and] that [his] perception as a whistleblower was a contributing factor to [his] nonselection." King, 116 M.S.P.R. at 696.

Below, the MSPB found that Mount failed to exhaust his perceived assistance claim and therefore it had no jurisdiction to entertain it. Relying on Federal Circuit precedent requiring that the employee inform the Special Counsel of the "precise ground" of his or her whistleblowing charge, see, e.g., Ward v. Merit Sys. Prot. Bd., 981 F.2d 521, 526 (Fed. Cir. 1992) ("[T]he employee must inform [OSC] of the precise ground of his charge of whistleblowing."); Carney v. Dep't of Veterans Affairs, 121 M.S.P.R. 446, 449 n.2 (2014),[7] the MSPB explained that Mount had never "expressly" raised a perceived whistleblower claim before the OSC; and that such "theory was never mentioned in the first iteration of this case." Additionally, the MSPB found that a "parsing of [Mount's assertions to OSC] does not reveal any alleged facts that would put OSC on notice of" the perceived assistance claim.

On appeal, Mount asserts that he exhausted the claim because the "OSC documents reveal facts that were articulate[d] with reasonable clarity and precision" and would have put the OSC on notice of said claim. On the other hand, the DHS argues that the fact that Mount did not expressly mention his perceived

---

[7] These cases addressed the factual sufficiency of employees' OSC complaints, not whether a particular legal theory was adequately raised.

-16-

assistance claim in his OSC complaint is dispositive. In support, it seizes on the Federal Circuit's "precise ground" formulation to assert that the "test for exhaustion is not what claims OSC could or might infer from the face of an appellant's OSC complaint." We review the MSPB's legal conclusion that Mount failed to exhaust administrative remedies de novo. See Delgado v. Merit Sys. Prot. Bd., 880 F.3d 913, 916 (7th Cir.), as amended on denial of reh'g and reh'g en banc (7th Cir. 2018).[8]

After careful consideration, we find that Mount asserts the correct position. First, we note that the text of the WPA does not dictate such a stringent exhaustion requirement. The statute simply states that the employee "shall seek corrective action from the Special Counsel before seeking corrective action

---

[8] The MSPB, as well as the Federal and Tenth Circuits, frame this exhaustion requirement as jurisdictional. According to the Federal Circuit, "[w]hether the Board had jurisdiction to adjudicate an appeal is a question of law, which we review de novo." Rosario-Fábregas v. Merit Sys. Prot. Bd., 833 F.3d 1342, 1345 (Fed. Cir. 2016); see also Acha v. Dep't of Agric., 841 F.3d 878, 883 (10th Cir. 2016) (deeming exhaustion to OSC requirement as jurisdictional). Nevertheless, the Seventh Circuit has called the jurisdictional characterization into question, noting that "[w]e see nothing in the statutory language . . . mandating that conclusion, particularly in light of the Supreme Court's recent jurisprudence requiring clear signals that a rule is truly jurisdictional rather than a 'case-processing rule' that need not be enforced as jurisdictional." Delgado, 880 F.3d at 925 n.3 (citing Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010)); see also Arbaugh v. Y & H Corp., 546 U.S. 500 (2006). The parties here have not raised the issue, and we need not decide it to resolve this case.

-17-

from the Board." 5 U.S.C. § 1214(a)(3). As the Seventh Circuit noted in Delgado:

> The exhaustion language in the statute is simple and brief. . . . We do not see why this directive should be read to require a federal employee (who typically is not trained in the law) to present to the OSC a perfectly packaged case ready for litigation.

880 F.3d at 923-24.[9] Furthermore, Section 2 of the WPA states that its purpose "is to strengthen and improve protection for the rights of Federal employees, to prevent reprisals, and to eliminate wrongdoing within the Government." Pub. L. No. 101-12, § 2(b), 103 Stat. 16, 16 (1989)(emphasis added). Thus, without explicit language, we will not construct the exhaustion requirement in a way that drastically conditions the rights that the WPA seeks to protect and makes it harder for whistleblowers to obtain relief. See Delgado, 880 F.3d at 924 ("[T]he [MSPB's] stringent application of the [WPA's] exhaustion requirement can effectively prevent all but the savviest federal whistleblowers from receiving a hearing on the merits.").

Second, the legislative history of the statute, as amended, does not suggest that Congress intended such a legally technical exhaustion requirement.[10] To the contrary, while not in

---

[9] In Delgado, the Seventh Circuit addressed an MSPB decision that was excessively stringent with respect to the sufficiency of the factual allegations presented to the OSC. 880 F.3d at 923.

[10] See Delgado, 880 F.3d at 924-25 ("We think Congress intended

the context of the specific exhaustion issue before us, Congress has repeatedly reiterated its whistleblower-protecting mandate. For instance, the House Report accompanying the bill for the 1994 WPA amendments listed fourteen examples of ways in which "[t]he body of case law developed by the [MSPB] and Federal Circuit has represented a steady attack on achieving the legislative mandate for effective whistleblower protection."  H.R. Rep. No. 103-769, at 17 (1994).  Speaking on the House Floor on the day that body approved a Senate amendment to the House-passed bill, the bill's sponsor, Representative Pete McCloskey, said that "[a] new example . . . may be the most significant": the practice of "requiring whistleblowers to identify the precise personnel actions at issue in their initial complaint to the Office of Special Counsel."  140 Cong. Rec. H11419-01 (daily ed. Oct. 7, 1994) (statement of Rep. McCloskey), 1994 WL 564324, at *H11422; see also Thomas M. Devine, The Whistleblower Protection Act of 1989: Foundation for the Modern Law of Employment Dissent, 51 Admin. L. Rev. 531, 570, n.218 (1999).  While the issue of identifying the precise personnel action is distinct from the one at hand -- identifying the precise legal theory -- the logic underlying Representative McCloskey's concern is largely applicable.  As he explained:

---

the exhaustion requirement simply to give the OSC and the employing agency a chance to resolve issues without litigation.").

-19-

> First this burden forces employees without counsel to fashion their complaints in legally technical language. Second, it is unrealistic, because often the full scope of reprisals is not exposed until the complaint is investigated or otherwise pursued.

140 Cong. Rec. H11419-01 (daily ed. Oct. 7, 1994) (statement of Rep. McCloskey), 1994 WL 564324, at *H11422.

Similarly, when Congress further amended the WPA in 2012 and 2014, it expressed concern with the Federal Circuit's restrictive rulings disfavoring alleged whistleblowers. In 2012, the relevant Senate Report bemoaned that "federal whistleblowers have seen their protections diminish in recent years, largely as a result of a series of decisions by the United States Court of Appeals for the Federal Circuit." S. Rep. No. 112-155, at 1 (2012). And in 2014, the House Report accompanying the All Circuit Review Extension Act of 2014 noted that the authorization of all-circuit review was "prompted" by "the Federal Circuit's overwhelming record of ruling against whistleblowers . . . ." H.R. Rep. No. 113-519, pt. 1, at 2 (2014).

Indeed, as recently as 2018, the Senate Report accompanying the All Circuit Review Act approvingly cited the Seventh Circuit's decision in Delgado for "differ[ing] from the Federal Circuit." S. Rep. No. 115-229, at 3 (2018) (citing Delgado, 880 F.3d 913). As noted earlier, Delgado construed the exhaustion requirement leniently by holding that a complainant need not

-20-

include "every detail that might be necessary to prove at trial." Delgado, 880 F.3d at 925. The Senate Report stated that "[s]uch a 'split in the circuit' was intended to occur with all-circuit review authority, allowing courts to critically review each other's decisions . . . and increase accountability in their interpretations of the laws." S. Rep. No. 115-229, at 3 (2018). While the Senate Report did not expressly adopt or commend the Seventh Circuit's reasoning in Delgado, it supported "permanently authoriz[ing] the all-circuit review authority . . . for Federal employee whistleblower claims." Id.

We therefore believe the correct approach is to interpret the WPA's exhaustion requirement "more consistently with other statutory exhaustion schemes," such as those of the Federal Tort Claims Act ("FTCA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Delgado, 880 F.3d at 925. Regarding the FTCA, we have stated that we "approach[] the notice requirement leniently" and that it is "the information available in the notice supplied to the agency, and not the form in which it [is] presented, that [is] crucial." Santiago-Ramírez v. Sec'y of Dep't of Def., 984 F.2d 16, 19, n.2 (1st Cir. 1993) (citing Corte-Real v. United States, 949 F.2d 484 (1st Cir. 1991)). In Santiago-Ramírez, we found that a letter that did not explicitly state a cause of action nevertheless satisfied the exhaustion requirement

-21-

because it provided sufficient factual information about the incident, the identities of parties involved, and the injury "to allow the agency to investigate." Id. at 20; see also Ramírez-Carlo v. United States, 496 F.3d 41, 46-47 (1st Cir. 2007) (citing Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 40 (1st Cir. 2000)).

Likewise, when examining exhaustion under Title VII, we have specified that the critical question is whether the claims "come within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Powers v. Grinnell Corp., 915 F.2d 34, 39 (1st Cir. 1990)(quoting Sánchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970)). In this context, we have stated that "the exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow." Id. (quoting Tipler v. E.I. duPont deNemours & Co., 443 F.2d 125, 131 (6th Cir. 1971)) (internal quotation marks omitted); see also White v. N.H. Dep't of Corr., 221 F.3d 254, 263 (1st Cir. 2000) ("Though the administrative complaint does not spell out all of the specific [incidents], it was sufficient to describe the essential nature of the charge and to lead to a reasonable investigation thereof.").

While not consistently, the MSPB has previously applied less stringent formulations of the WPA's exhaustion requirement. For instance, in McCauley v. Dep't of Veterans Affairs, No. CH-1221-14-0721-W-1, 2016 WL 685076 (M.S.P.B. Feb. 18, 2016), it held that the appellant had exhausted a perceived whistleblower allegation because he "stated in his OSC complaint that he was 'called on the carpet' by the VAMC Assistant Director after he wrote the letter to the head of the agency." And in the context of determining the degree of specificity required to exhaust a particular "category of wrongdoing," it stated:

> Because the [WPA] is remedial legislation, the [MSPB] will construe its provisions liberally to embrace all cases fairly within its scope . . . . The key to determining whether an appellant has satisfied the exhaustion requirement in an IRA appeal is whether he provided OSC with a sufficient basis to pursue an investigation, not whether he correctly labeled the category of wrongdoing; OSC can be expected to know which category of wrongdoing might be implicated by a particular set of factual allegations.

Pasley v. Dep't of Treasury, 109 M.S.P.R. 105, 111-12 (2008) (emphasis added). These are in line with our holding today that it is unnecessary for an employee to correctly label the cause of action or legal theory behind his claim for it to be deemed exhausted before the OSC, as long as he or she provides a "sufficient [factual] basis" for the MSPB to pursue an investigation regarding that particular claim. Id. at 112.

-23-

While Mount's OSC complaint did not expressly mention a "perceived assistance claim" or state that his supervisors "perceived" Mount to have engaged in protected activity, his allegations can be construed as such, as they support the core element of a perceived whistleblower claim: "that agency officials appeared to believe that [he] engaged . . . in whistleblowing activity." King, 116 M.S.P.R. at 695. Importantly, Mount repeatedly alleged that his supervisors took actions "to retaliate against [him] for providing information to SA Hickey that was used during his OSC whistleblower complaint/investigation against HSI Boston management officials." Numerous other allegations in the complaint support this view. For example, Mount alleged that Kurtz told him that: (1) the "'Front Office' . . . was not happy about the email" and (2) he had informed those supervisors that "it was . . . Mount's decision to give the email to SA Hickey." Moreover, the complaint recounts a later May 2015 meeting in which Shea, a supervisor, told Mount that he was disappointed in him and accused him of lying, while Mount attempted to disabuse Shea of the notion that delivering the email was his own idea. Additionally, the complaint relates that in August 2015, Mount "was informed he was being investigated for unauthorized release of information (giving the email to SA Hickey) and lack of candor (allegedly not expressly telling DSAC Shea he had read the email

. . .)"; and that in September 2015, a supervisor told Mount that he did not interview him for an open position for which Mount had applied "because of the whole lying and Brendan Hickey email thing."

While we could continue parading examples, we need not go any further. Together, the above statements imply that Mount's supervisors had at least a perception that Mount engaged in protected activity, in this case providing information to SA Hickey to help him in his whistleblower case. Consequently, we find that Mount's original OSC complaint provided a sufficient factual basis to put OSC on notice of a potential perceived assistance claim. See Delgado, 880 F.3d at 927 (holding that appellant satisfied the WPA's exhaustion requirement "by presenting the OSC with sufficient information to permit a legally sophisticated reader to understand his charge of retaliation and to investigate it further").

### III.  Conclusion

Because Mount satisfied the WPA's exhaustion requirement as to his perceived assistance claim, his petition for review is granted, and the case is remanded as to said claim for further proceedings consistent with this opinion.

**Granted and Remanded.**