# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| MARGARET M. CONSIDINE,<br>Appellant, | DOCKET NUMBER<br>PH-1221-17-0279-W-1 |
| v. | |
| DEPARTMENT OF THE TREASURY,<br>Agency. | DATE: June 27, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Richard R. Renner, Esquire, Chapel Hill, North Carolina, for the appellant.

Neil M. Robinson, Esquire, and Amber Melton, Esquire, Washington, D.C., for the agency.

Lamine Hendrix, Esquire, Washington, D.C., for amicus curiae, the Office of Special Counsel.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and
did not participate in the adjudication of this appeal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

# FINAL ORDER

The agency has filed a petition for review, and the appellant has filed a cross petition for review of the initial decision, which granted corrective action in this individual right of action (IRA) appeal. For the reasons discussed below, we DENY the appellant's motion to dismiss the agency's petition for review for failure to comply with an interim relief order, GRANT the agency's petition for review, DENY the appellant's cross petition for review, REVERSE the initial decision, and DENY the appellant's request for corrective action.

# BACKGROUND

By notice dated June 22, 2016, the agency terminated the appellant from her excepted-service position as a Bank Examiner with the Office of the Comptroller of the Currency (OCC) in New Jersey during her trial period due to inadequate performance, effective close of business on June 23, 2016. Initial Appeal File (IAF), Tab 5 at 27, Tab 6 at 4. Thereafter, the appellant filed a complaint with the Office of Special Counsel (OSC) alleging that the agency terminated her in retaliation for whistleblowing disclosures. IAF, Tab 1 at 13-14. By notice dated March 31, 2017, OSC notified her that it was closing her complaint without action and summarized her disclosures as follows:

> 1. In early February 2016, you disclosed to two supervisors that a bond on a certain bank's trial balance sheet appeared to violate the Volcker rule[2] and to present a conflict of interest.
>
> 2. On several occasions beginning in February 2016, you complained to management officials that loud conversations and other commotion in the examination rooms disrupted your efforts to concentrate on your work assignments.
>
> 3. In June 2016, you reported to management officials that the Functional Examiner-in-Charge [(FEIC)] provided false information to a bank official by stating that the OCC had consented to a proposal to backdate a legal document.

---

[2] In relevant part, the Volcker Rule prohibits banks from engaging in certain investment activity using customer deposits. *See* 12 U.S.C. § 1851; 12 C.F.R. part 44; IAF, Tab 5 at 11, Tab 11 at 11.

        4. On two separate occasions in June 2016, you informed the [FEIC] that commercial real estate loans had been financed without any evidence that hazardous environmental conditions noted in a phase one assessment had been addressed or remedied.

*Id.* at 13.

        The appellant timely filed the instant IRA appeal arguing that the agency terminated her from her position in retaliation for the disclosures identified in OSC's closure letter. IAF, Tab 1 at 6, Tab 11 at 23-29. The administrative judge found that the appellant established jurisdiction over her appeal and held the hearing she requested. IAF, Tabs 18, 42-43. In the initial decision, the administrative judge found that disclosure 3, which pertained to the FEIC falsely informing a bank that the OCC consented to its backdating proposal, was protected and that the appellant engaged in protected activity by filing a prior Board appeal. IAF, Tab 46, Initial Decision (ID) at 8-9, 11. He found that disclosures 2 and 4 were not protected because a reasonable person would not believe that a noisy workplace or a loan collateralized by real property that may not have been properly appraised evidenced one of the categories of wrongdoing covered by the Whistleblower Protection Enhancement Act (WPEA). ID at 8-9. In addition, he found that disclosures 1 and 4 were not protected because, pursuant to *Aviles v. Merit Systems Protection Board*, 799 F.3d 457 (5th Cir. 2015), disclosures of misconduct by non-Governmental entities are not covered by the WPEA unless there is an allegation of Government complicity in the private wrongdoing. ID at 7-8. The administrative judge concluded that the appellant's third disclosure and prior Board appeal contributed to the agency's decision to terminate her, and that the agency failed to show by clear and convincing evidence that it would have taken the same action in the absence of her protected activity. ID at 12-14. Accordingly, he granted the appellant's request for corrective action and ordered the agency to reinstate her. ID at 14. The initial decision did not contain a statement on interim relief.

The agency has filed a petition for review of the initial decision, the appellant has responded, and the agency has replied. Petition for Review (PFR) File, Tabs 1, 5, 7. The appellant has filed a motion to dismiss the agency's petition for review on the grounds that it did not provide her interim relief, and the agency has responded in opposition to this motion. PFR File, Tabs 3-4. The appellant has also filed a cross petition for review, and the agency has responded.[3] PFR File, Tabs 5, 8. OSC has filed an amicus curiae brief in which it argues that the Board should hold, contrary to *Aviles*, that the WPEA broadly protects Federal employee disclosures of wrongdoing by non-Governmental entities or, in the alternative, that such disclosures are protected if they implicate the Government's good name and interests, rather than only when there are allegations of Government complicity in the private wrongdoing.[4] PFR File, Tab 12. The agency and the appellant have responded to OSC's amicus brief.[5] PFR File, Tabs 14-15.

---

[3] On December 4, 2018, after the record closed on review, the appellant filed a motion for leave to reply to the agency's response to her cross petition for review. PFR File, Tab 10. She argues that this additional pleading is needed to clarify the applicability of *Aviles* to this appeal, to respond to the agency's argument that it had no duty to provide interim relief, and to explain that her request for additional witnesses is conditional upon the agency prevailing on its petition for review. PFR File, Tab 1 at 4-5. However, as the Office of the Clerk of the Board advised her, the Board's regulations do not provide for a reply to a response to a cross petition for review and generally preclude consideration of evidence or argument submitted after the close of the record absent a showing that it was not readily available before the record closed. PFR File, Tab 9; 5 C.F.R. § 1201.114(a)(5), (k). Here, the appellant has not shown that the reply she seeks to file contains evidence or argument that was unavailable before the close of the record or that it is necessary for our understanding of the case. Moreover, she was afforded an opportunity to further address *Aviles* in her response to an amicus curiae brief filed by OSC. PFR File, Tab 15. Accordingly, we DENY her motion. *See Martin v. U.S. Postal Service*, 123 M.S.P.R. 189, ¶ 8 n.1 (2016); *Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 5 n.1 (2011).

[4] We grant OSC's unopposed motion for leave to file an amicus curiae brief. PFR File, Tab 12; *see* 5 C.F.R. § 1201.34(e).

[5] To the extent the parties' responses address matters beyond the scope of OSC's amicus brief, PFR File, Tab 14 at 8-10, Tab 15 at 4-8, we do not consider them, *see* 5 C.F.R. § 1201.114(a)(5), (k).

## ANALYSIS

The appellant's motion to dismiss the agency's petition for review is denied.

When an administrative judge issues an initial decision in an IRA appeal and the appellant is the prevailing party, interim relief may be provided under 5 U.S.C. § 7701(b)(2)(A). *Costin v. Department of Health & Human Services*, 72 M.S.P.R. 525, 530-32 (1996), *modified on other grounds*, 75 M.S.P.R. 242 (1997). When an agency fails to satisfy its interim relief obligation, its petition for review may be subject to dismissal within the Board's discretion. 5 C.F.R. § 1201.116(b)-(e); *see Magnusson v. Department of Veterans Affairs*, 67 M.S.P.R. 88, 90-91 (1995).

When, as here, the appellant is the prevailing party in the initial decision, the Board's regulations require that the initial decision contain a statement on interim relief, affirmatively stating whether interim relief has been granted. 5 C.F.R. § 1201.111(b)(4). The initial decision in this case contained no such statement. Because they were uncertain of the administrative judge's intentions, the parties sought clarification from him after the initial decision was issued. PFR File, Tab 4 at 5. In the ensuing teleconference, the administrative judge informed the parties that the absence of a statement on interim relief was intentional and that he had decided not to grant interim relief. *Id*. Therefore, the agency declined to reinstate or pay the appellant pending the outcome of its petition for review. *Id*. at 7. However, after the initial decision was issued, the Board clarified that, when interim relief is available under the law, an initial decision's silence on interim relief has the effect of granting interim relief by operation of statute. *Stewart v. Department of Transportation*, 2023 MSPB 18, ¶ 10. Thus, the administrative judge was mistaken about the legal effect of his silence on interim relief, and for the reasons explained in her motion to dismiss, we agree with the appellant that the agency had a legal obligation in this case to grant her interim relief. PFR File, Tab 3 at 4-7.

Nevertheless, we decline to dismiss the agency's petition for review for failure to provide interim relief because the agency engaged in diligent, good faith efforts to discover its interim relief obligations, even though the conclusion that it reached was legally incorrect. *See Stewart*, 2023 MSPB 18, ¶ 12 (holding that the chief consideration in deciding whether to dismiss an agency's petition for review on interim relief grounds will be "whether the agency undertook good faith, diligent, and competent efforts to satisfy its interim relief obligation"). We note that the statements that the administrative judge made at the teleconference were not sufficient to relieve the agency of its interim relief obligations because they essentially purported to alter the substance of the initial decision after it had been issued. *See id*., ¶ 9. Since the Board has clarified the law on this matter in *Stewart*, we now consider agencies to be on notice that silence on interim relief means that interim relief has been granted by default, and that the administrative judge lacks the authority to revoke such grant of interim relief in a post-initial decision issuance or statement. If this initial decision had been issued after *Stewart*, the result here might be different, but since the agency did not have the benefit of *Stewart* and otherwise proceeded diligently and in good faith, we decline to dismiss the petition for review.

The agency's failure to timely object to the administrative judge's decision to disallow a witness precludes it from doing so on review.

On review, the agency argues that the administrative judge abused his discretion in excluding one of its requested witnesses, the FEIC, from testifying at the hearing. PFR File, Tab 1 at 20-25. The agency contends that the significance of this witness's testimony is "hard to overstate" because he had personal knowledge regarding the appellant's one disclosure found to be protected, as well as her unsatisfactory work performance. *Id.* at 20. However, the agency did not object to the administrative judge's disallowance of this

witness below and is thus precluded from doing so on review.[6] *See Tarpley v. U.S. Postal Service*, 37 M.S.P.R. 579, 581 (1988).  Even if the agency had preserved an objection below, the agency has not shown that this witness's hearing testimony would have differed from his deposition testimony, which is contained in the record, or that such testimony would have altered the outcome in this appeal.  IAF, Tab 35 at 149-66, Tab 37 at 18; PFR File, Tab 1 at 20-25; *see Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985) (holding that, under the Board's regulations, the presiding official has wide discretion to control the proceedings, including the authority to exclude witnesses when the requesting party has not shown that their testimony would be relevant, material, and nonrepetitious); *see also Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (stating that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision); 5 C.F.R. § 1201.41(b)(8), (10).

<u>The Board lacks jurisdiction to consider whether the agency terminated the appellant in retaliation for filing a prior Board appeal.</u>

Although not raised by either party on review, a question exists regarding the Board's jurisdiction over the appellant's claims related to reprisal for filing a prior Board appeal.  *See Ney v. Department of Commerce*, 115 M.S.P.R. 204, ¶ 7 (2010) (stating that the issue of the Board's jurisdiction is always before the Board and may be raised sua sponte by the Board at any time).  Under the WPEA, the Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations of the following:  (1) she engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8), or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or

---

[6] The appellant argues that, if the agency is permitted to call the FEIC as a witness, she must be allowed to call three rebuttal witnesses.  PFR File, Tab 5 at 37-38.  Because the agency is not being permitted to call this witness, we need not address the appellant's argument.

protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).[7] *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). The Board may only consider those disclosures, activities, and personnel actions that the appellant raised before OSC. *See Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 9 (2016) (stating, in a pre-WPEA IRA appeal, that the Board may only consider those disclosures of information and personnel actions raised before OSC). The exhaustion requirements are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10.

Here, although the appellant exhausted her claim that the agency terminated her in retaliation for making the four disclosures identified in OSC's closure letter, there is no evidence, and she has not alleged, that she informed OSC that the agency retaliated against her for filing a prior Board appeal.[8] IAF, Tab 1 at 13-14, Tab 11 at 17, Tab 33 at 18. Thus, she failed to exhaust a claim of reprisal for prior protected activity before OSC, and the Board lacks jurisdiction to consider it in this IRA appeal.[9] *See Willis v. Department of Agriculture*,

---

[7] A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. 5 C.F.R. § 1201.4(s).

[8] We note that the appellant has not submitted a copy of her OSC complaint or any correspondence with OSC.

[9] In the initial decision, the administrative judge observed that the appellant "most certainly would have included" a claim for reprisal for prior protected activity if the agency had been forthcoming with certain evidence regarding its knowledge of her prior Board appeal. ID at 5 n.4. Specifically, he pointed to evidence produced by the agency several days before the hearing showing that, on April 4, 2016, an agency employee forwarded to the deciding official a copy of the U.S. Court of Appeals for the Federal Circuit decision affirming the final decision of the Board in the appellant's prior removal appeal, *Considine v. National Credit Union Administration*, 366 F. App'x 157 (Fed. Cir. 2010). ID at 10-11; IAF, Tab 33 at 77-86. Because the exhaustion requirement is jurisdictional, however, we are precluded from considering unexhausted claims even when, as here, there may be reasons the appellant could not have previously raised such claim before OSC. *See Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Scoggins*, 123 M.S.P.R. 592, ¶ 9.

141 F.3d 1139, 1144 (Fed. Cir. 1998) (finding that the Board correctly declined to consider allegations of disclosures not clearly raised before OSC), *superseded by statute on other grounds as stated in Day v. Department of Homeland Security*, 119 M.S.P.R. 589, ¶¶ 14-15, 18 (2013).

<u>The administrative judge correctly found that only the appellant's third disclosure was protected.</u>

Although the Board lacks jurisdiction over the appellant's claim of reprisal for filing a prior Board appeal, we do not disturb the administrative judge's determination that the appellant established jurisdiction over her claim that the agency terminated her in reprisal for at least one protected disclosure exhausted before OSC. IAF, Tab 18. When, as here, an appellant has established jurisdiction over her IRA appeal, she then must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that she made a protected disclosure or engaged in protected activity that was a contributing factor in a personnel action taken against her.[10] *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015); *see* 5 U.S.C. § 1221(e)(1).

Under the WPEA, a protected disclosure is "any disclosure of information" that an appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.[11] 5 U.S.C. § 2302(b)(8)(A); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5, n.3 (2013). A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A). *Chavez v. Department*

---

[10] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

[11] The relevant events occurred after the December 27, 2012 effective date of the WPEA. Pub. L. No. 122-199, § 202, 126 Stat. 1465, 1476. Therefore, we have applied the WPEA to this appeal.

*of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 18 (2013). The appellant need not prove, however, that the matter disclosed actually established one of the covered types of wrongdoing. *Id.*

In determining whether the appellant's disclosures were protected, the administrative judge applied *Aviles*, 799 F.3d at 464-66, in which the U.S. Court of Appeals for the Fifth Circuit found that the WPEA had not expanded the scope of the Whistleblower Protection Act (WPA) to cover allegations of wrongdoing by non-Governmental entities and that disclosures of private wrongdoing could only be protected if there were allegations of Government complicity in the alleged private wrongdoing. ID at 7-9. Pursuant to *Aviles*, he found that disclosure 3 regarding the FEIC informing the bank that the agency consented to its backdating proposal was protected because, although it involved private wrongdoing, the FEIC was complicit in the wrongdoing. ID at 9-10; IAF, Tab 1 at 13. On the other hand, also relying on *Aviles*, he found that disclosure 4 regarding commercial real estate loans that were financed without evidence that the environmental hazards on the collateralized property had been remedied, as well as disclosure 1 pertaining to a bank's violation of the Volcker Rule, were not protected because they concerned purely private misconduct. ID at 8-9. He also found that disclosure 2 regarding the loud and disruptive workplace and disclosure 4 were not protected because a reasonable person could not believe that these situations evidenced one of the categories of wrongdoing specified in the WPEA. ID at 8-9.

On review, the parties have not challenged the administrative judge's determination that the appellant's second disclosure regarding the disruptive workplace was not protected, and we discern no basis to disturb this finding. PFR File, Tabs 1, 5, 7-8. The appellant argues, however, that the administrative judge erred in relying on *Aviles* to find that the first and fourth disclosures were not protected. PFR File, Tab 5 at 31-36, Tab 15 at 8-10. She argues that *Aviles* was wrongly decided and that neither the WPA nor the WPEA exclude disclosures

regarding violations of law, rule, or regulation by non-Governmental entities from coverage. PFR File, Tab 5 at 31-37. Likewise, in its amicus brief, OSC asserts that, pursuant to the plain language of the statute, legislative history, and a "commonsense understanding of the WPA's purpose and effect," the Board should find that Federal employee disclosures of wrongdoing by non-Governmental entities are not excluded from protection. PFR File, Tab 12 at 4-10. In response, the agency argues that the court in *Aviles* thoroughly addressed and rejected the arguments raised in OSC's amicus brief and correctly concluded that the WPEA does not apply to disclosures that do not involve Government misconduct. PFR File, Tab 14 at 6-8.

As set forth above, an agency may not take a personnel action against an employee because of "any disclosure of information" by the employee that she reasonably believes evidences one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). Despite the statute's reference to "any disclosure of information," the Board has held that, under the WPA, a disclosure of wrongdoing committed by a non-Federal Government entity may be protected only when the Government's interests and good name are implicated in the alleged wrongdoing, and the employee shows that she reasonably believed that the information she disclosed evidenced that wrongdoing. *Miller v. Department of Homeland Security*, 99 M.S.P.R. 175, ¶ 12 (2005); *Arauz v. Department of Justice*, 89 M.S.P.R. 529, ¶ 7 (2001); *see Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999) (finding a disclosure protected if a disinterested observer could reasonably conclude that the "actions of the [G]overnment" evidence a kind of wrongdoing covered under 5 U.S.C. § 2302(b)(8)); *see also Willis*, 141 F.3d at 1143 (finding that the purpose of the WPA is to encourage "[G]overnment personnel to disclose [G]overnment wrongdoing"). Recently, the Board found that the WPEA did not affect the Board's holding in *Arauz* and agreed with the analysis set forth in *Aviles*, 799 F.3d at 464-66, that the WPEA did not extend coverage to disclosures of purely private wrongdoing. *Covington v. Department*

*of the Interior*, 2023 MSPB 5, ¶¶ 16-19. For the reasons set forth in *Covington*, we find that the administrative judge properly relied on *Aviles* to find that the WPEA did not extend coverage to disclosures of purely private conduct. In addition, we decline OSC's invitation to hold that disclosures of purely private wrongdoing are broadly protected under the WPEA.

In its amicus brief, OSC also argues that, even if the Board declines to find that the WPEA broadly protects disclosures of private wrongdoing, the administrative judge erred in applying the standard articulated in *Aviles*—i.e., that disclosures of private misconduct are protected if there are allegations of Government complicity in the private wrongdoing—rather than the standard previously applied by the Board—i.e., that disclosures of private wrongdoing are protected if the private wrongdoing implicates the Government's good name and interests. PFR File, Tab 12 at 10-12. OSC argues that the Government complicity standard is more restrictive than the Government good name and interests standard enunciated in *Arauz* and *Miller* and that it is "without any basis in the whistleblower protection statutes, legislative history, or [Board] precedent." *Id.* For the reasons discussed below, however, we find that the result in this appeal would be the same regardless of which standard is applied, and we therefore need not resolve whether the administrative judge erred by applying the Government complicity standard.

The appellant's first disclosure that a particular bank may have violated the Volcker Rule pertains only to misconduct by the private bank and does not implicate the Government's good name and interests or involve Government complicity in the alleged private wrongdoing. IAF, Tab 33 at 11-12; Hearing Transcript (HT) at 45-48, 134-37 (testimony of the appellant). We note that the appellant's allegation below that agency employees discouraged her from pursuing her concerns regarding the bank's potential Volcker violation possibly implicates the Government's good name and interests or suggests agency complicity in the private wrongdoing. *Id.* However, there is no indication that

she disclosed this potential implication or Government complicity to anyone before raising it in this appeal.[12]  *See Aviles*, 799 F.3d at 466 (stating that disclosures may be protected if the "disclosure includes allegations of government complicity in the private wrongdoing"); *see also Voorhis v. Department of Homeland Security*, 116 M.S.P.R. 538, ¶ 30 (2011) (stating that disclosures may be protected if they "implicate the reputation and good name of the federal government"), *aff'd*, 474 F. App'x 778 (Fed. Cir. 2012).  Accordingly, the appellant has not shown that her first disclosure was protected.

The appellant's fourth disclosure that a commercial real estate loan was improperly collateralized because the borrower withheld information regarding an environmental hazard on the property used as collateral from the appraiser, resulting in a higher appraised value, also pertains to purely private misconduct. IAF, Tab 33 at 17-18, 121, 124; HT at 64, 90, 143 (testimony of the appellant). The appellant has not shown or alleged that any wrongdoing by the lender, borrower, or appraiser implicates the Government's good name or interests or that any Government official was complicit in the alleged misconduct.  Moreover, as noted above, the administrative judge found, and we agree, that the appellant has not shown that a reasonable person would believe that an incorrect appraisal of real property evidences one of the categories of wrongdoing specified in section 2302(b)(8).  ID at 9.  Thus, the appellant has not shown that her fourth disclosure was protected.

Finally, as noted above, the administrative judge found that the appellant's third disclosure that the FEIC provided false information to a bank official when he stated that the agency consented to a proposal to backdate a legal document was protected.  ID at 5, 8-9.  In so finding, he determined that the appellant credibly testified that she raised this issue with her supervisor and gave specific

---

[12] Even if the appellant disclosed the agency employees' conduct in response to her concerns about the bank's potential Volcker Rule violation, she has not provided any evidence reflecting that she exhausted such a disclosure before OSC.  IAF, Tab 1 at 13-14; *see Willis*, 141 F.3d at 1144.

and detailed information that she reasonably believed this conduct evidenced a violation of law, rule, or regulation. ID at 8-9. The agency appears to challenge this finding on review, arguing that the appellant's disagreement with the bank's proposed solution to its documentation error amounted to a policy disagreement, rather than a disclosure of illegal bank activity. PFR File, Tab 1 at 23.

General philosophical or policy disagreements with agency decisions are not protected unless the appellant has a reasonable belief that the disclosed information separately evidences one of the covered categories of wrongdoing. *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶¶ 8-9, 12 n.6 (2015); *see* 5 U.S.C. § 2302(a)(2)(D). Here, even if the appellant's disclosure amounted to a policy disagreement, we discern no basis to disturb the administrative judge's credibility-based determination that the appellant had a reasonable belief that backdating a legal banking document evidenced a violation of law, rule, or regulation. *See Webb*, 122 M.S.P.R. 248, ¶¶ 8-9; *Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1373 (Fed. Cir. 2016) (finding that the Board must defer to an administrative judge's demeanor-based credibility determinations "[e]ven if demeanor is not explicitly discussed"); *see also Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 4 (2009) (noting that when an administrative judge has heard live testimony, her credibility determinations must be deemed to be at least implicitly based upon witness demeanor). In addition, we discern no basis to disturb the administrative judge's determination that, by consenting to the proposal, the FEIC was complicit in what the appellant reasonably believed was a violation of law, rule, or regulation and further find that this complicity implicates the Government's interests and good name. ID at 8; *see Miller*, 99 M.S.P.R. 175, ¶ 12; *Arauz*, 89 M.S.P.R. 529, ¶ 7; IAF, Tab 38 at 37. Accordingly, we agree with the administrative judge that the appellant's third disclosure was protected.

<u>The appellant did not establish that her third disclosure was a contributing factor in her termination.</u>

As noted above, the appellant must next prove by preponderant evidence that her disclosure was a contributing factor in a personnel action. *Scoggins*, 123 M.S.P.R. 592, ¶ 21. Personnel actions include, as relevant here, a termination during a trial period. *See* 5 U.S.C. § 2302(a)(2)(A)(iii); *Scalera v. Department of the Navy*, 102 M.S.P.R. 43, ¶ 15 (2006) (stating that a probationary termination is a covered personnel action). The term "contributing factor" means any disclosure that affects an agency's decision to threaten, propose, take, or not take a personnel action regarding the individual making the disclosure. *Scoggins*, 123 M.S.P.R. 592, ¶ 21. The most common way of proving the contributing factor element is the "knowledge/timing test." *Id.* Under that test, an appellant can prove that her disclosure was a contributing factor in a personnel action through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.* Once an appellant has satisfied the knowledge/timing test, she has demonstrated that a protected disclosure was a contributing factor in a personnel action. *Id.*

In the initial decision, the administrative judge found that the appellant established by preponderant evidence that her third disclosure contributed to the agency's June 22, 2016 termination decision based on the knowledge/timing test, explaining that the termination and disclosure were close in time and that the supervisors were aware of the disclosure. ID at 10. The agency appears to challenge this finding on review, arguing that the appellant's supervisor decided to terminate the appellant before the wrongdoing at issue in her third disclosure even occurred. PFR File, Tab 1 at 24.

The wrongdoing at issue in the appellant's third disclosure occurred on June 16, 2016, when the FEIC emailed the bank official stating that the agency

did not object to the bank's backdating proposal, and the appellant's disclosure of this wrongdoing therefore necessarily occurred sometime after that date. IAF, Tab 38 at 37. However, as the agency correctly argues on review, the process to remove the appellant began before the date of the wrongdoing—specifically, the appellant's supervisor requested a termination decision from human resources on June 9, 2016, and a draft termination notice began circulating on June 14, 2016. IAF, Tab 33 at 87-90, Tab 34 at 8. Nonetheless, the fact that the appellant's supervisor began the process to terminate the appellant before she made her third disclosure does not necessarily preclude a finding of contributing factor. While disclosures made after an action has been "initiated," i.e., the decision to take the action has been finalized even if not yet implemented, cannot be a contributing factor in the action, an action that was only "contemplated and in preparation" prior to a disclosure can serve as the predicate personnel action in an IRA appeal. *Fickie v. Department of the Army*, 86 M.S.P.R. 525, ¶ 9 (2000) (citing *Horton v. Department of the Navy*, 66 F.3d 279, 284 (Fed. Cir. 1995), *superseded by statute on other grounds as stated in Day*, 119 M.S.P.R. 589, ¶¶ 14, 18). Here, the agency's decision to terminate the appellant was finalized on June 22, 2016, when her supervisor issued her the dated and signed termination notice and, therefore, any disclosures made before June 22, 2016, could have contributed to the agency's termination decision even if they were made after her supervisor requested a termination decision from human resources. IAF, Tab 6 at 4, Tab 33 at 36, Tab 37 at 57, Tab 40 at 56.

It is undisputed that the appellant sent a June 23, 2016 email to the OCC ethics attorney, with copies to the appellant's supervisor and the FEIC, clearly stating her objection to the FEIC's consent to the bank's proposal to backdate a document. IAF, Tab 38 at 36. However, her disclosure in this email cannot serve as a contributing factor to her termination because the termination decision had already been finalized. *See Horton*, 66 F.3d at 284. Although the appellant testified that, before she was terminated, she expressed her concern about the

bank's backdating proposal to the FEIC and her supervisor and told the FEIC that she would not "be complicit in the backdating of a legal document," these concerns pertain only to purely private wrongdoing by the bank. HT at 81-83, 103-04, 114-25, 139-43, 240-45 (testimony of the appellant). There is no evidence or testimony reflecting that the appellant made her protected disclosure containing allegations of Government involvement in the alleged private wrongdoing—i.e., that the FEIC falsely informed the bank that the agency agreed to its proposal to backdate a legal document—to anyone before June 23, 2016. Accordingly, the administrative judge erred in finding that the appellant established contributing factor based on knowledge/timing.[13] ID at 10.

The knowledge/timing test, however, is not the only way for an appellant to satisfy the contributing factor standard. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). Rather, if the Board determines that an appellant has failed to meet the knowledge/timing test, it must consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the official who took the action, and whether the individual had a desire or motive to retaliate against the appellant. *Id.*, ¶ 15.

In the initial decision, the administrative judge found as part of his clear and convincing analysis that the agency did not have strong evidence in support of its decision to terminate the appellant, noting that one of the bank examiners who reviewed the appellant's work testified that she had a good work ethic and good technical skills. ID at 13. However, as the agency notes on review, the administrative judge appeared to misrepresent the hearing testimony. PFR File, Tab 1 at 12-19. Although the bank examiner testified that the appellant had a good work ethic and "some technical skills," she further testified that the

---

[13] For the reasons discussed above, the appellant's disclosure that the bank proposed to backdate a document, without any reference to the FEIC's involvement in the alleged wrongdoing, is not a protected disclosure under the WPEA because it pertains to purely private conduct. *See Miller*, 99 M.S.P.R. 175, ¶ 12; *Arauz*, 89 M.S.P.R. 529, ¶ 7.

appellant "did not meet expectations," her "productivity was low," "the products that I did get were not fully developed," and she "struggled with some basic credit concepts." HT at 260-63, 299 (testimony of a national bank examiner). Another bank examiner who reviewed the appellant's work testified that her "credit skills were not commensurate with the complexities of this assignment" and that she spent "an inordinate amount of time reviewing documentation," and he further stated in an email that, although "she may be able to work independently in the future, [] it is going to take some time." HT at 315 (testimony of a national bank examiner); IAF, Tab 38 at 77-78. In addition, Assignment Evaluation Forms in the record reflect deficiencies in the appellant's technical, analytical, organizational, and communication and interpersonal skills. IAF, Tab 38 at 30-32, 79-80, Tab 39 at 37-40. Thus, we find that the agency's reasons for terminating the appellant for inadequate performance were sufficiently strong. Moreover, the appellant's third disclosure was not personally directed at her supervisor, who took the termination action. Finally, given that the appellant's supervisor was unaware of the appellant's third disclosure at the time she asked human resources to prepare the termination decision and at the time she issued the decision, we discern no basis to find that she had a desire or motive to retaliate against the appellant.

In light of the foregoing, we find that the appellant failed to prove by preponderant evidence that her third disclosure contributed to the agency's decision to terminate her during her trial period and therefore that she failed to establish a prima facie case of whistleblower reprisal. Accordingly, we deny the appellant's request for corrective action.[14]

---

[14] When, as here, the appellant has not established a prima facie case of whistleblower reprisal, the Board may not proceed to address whether the agency proved by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. *See Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014) (holding that the Board may not proceed to the clear and convincing test unless it has first made a finding that the appellant established his prima facie case), *aff'd per curiam*, 623 F. App'x 1016 (Fed. Cir. 2015).

## NOTICE OF APPEAL RIGHTS[15]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[15] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[16] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[16] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


*Gina K. Grippando*

FOR THE BOARD: _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.